Mr. Chief Justice, and may it please the Court, in Section 3311 of the Post-911 GI Bill, Congress awarded veterans who served after the September 11th attacks with an entitlement to wartime benefits befitting their wartime service. In Section 3327 of the same Act, Congress created a Generous Benefit-Coordination Act for veterans who served after the September 11th attacks. Wherein, veterans who had earned peacetime Montgomery benefits with post-9-11 service could trade the unused portion of those Montgomery benefits for post-9-11 benefits. My client has no interest in trading his Montgomery benefits for his post-9-11 benefits, so he has no use for the 3-3-27 Election Regime. Rather, the petitioner is invoking his statutory entitlement under 3-3-11 to cash in a second period of service for post-9-11 benefits. That second period of service is only eligible for post-9-11 benefits, it's not eligible for Montgomery benefits, so there's nothing for my client to coordinate. Now, the VA concedes that my client has, in fact, earned a statutory entitlement under 3-3-11 to cash in a second period of service for wartime benefits. But the VA takes the position that Section 3-3-27's May Elect Clause revokes that entitlement until he uses up or exhausts the Montgomery benefits he earned from his first period of service. But with all respect, a May Elect Clause is simply not how Congress revokes clear statutory entitlements, and certainly not in the Byzantine manner that the VA suggests. Further, the exhaustion requirement that is the linchpin of the VA's interpretation finds no grounding in the statutory text and produces absurd results, such as punishing veterans with less wartime benefits for simply having served the nation longer. Finally, the VA's effort to turn a regime plainly designed to help a category of veterans into a punitive regime punishing long-serving veterans has numerous contextual problems, including making 3-3-22's concurrent usage bar surplusage. I welcome the Court's questions. You make it seem as though the election mechanism doesn't play much of a role in determining whether or not a petitioner is able to get the second set of benefits, the 9-11 benefits. I thought that the 33-27 requires election, but it also has limitations. You also seem to agree in your brief that you're limited by the concurrent. You could not have the 9-11 benefits and the Montgomery benefits simultaneously, right? That's correct, Your Honor. But also, you seem not to think that the coordination provisions apply. So, A applies, right? So, 3-3-2-A applies because it's a shall elect. Okay, but then you say D doesn't apply. So, D says that coordination shall be governed, and our submission is that we are not coordinating. Well, so what are you? I mean, you have a second set of benefits. I thought the whole point was to have the benefits, if you qualify for two, it is coordinated. No, Your Honor, we're just using. I think my friends on the other side say we would not be coordinating if we first used our Montgomery benefits, and then exhausted our Montgomery benefits, and then thereafter used post-9-11 benefits. I fail to understand how simply using post-9-11 benefits is coordination. I know, but you admit that you can't have them simultaneously. If you say you qualify for them and you have a separate entitlement for them, then why can't you use them concurrently? Because 33-22-A specifically says you can't use them concurrently. So, then why aren't you limited by 33-22-D? 33-22-D is not a limitation. All it is is a cross-reference coordination provision, and my friend at the VA admits that that provision itself doesn't act as a limitation. Further, that provision can't possibly do the work here. I mean, most of the sections listed as needing to be coordinated under 33-22-D aren't even referenced in 33-27. Let me ask one final question. You say that you are entitled to separate benefits. What if, rather than Petitioner having separate tours in the military, he had one continuous tour for a decade or so? Would you still have the same argument? Absolutely the same argument. When I'm talking about separate periods of service, I mean a period long enough to qualify for Montgomery benefits, which is two or three years, and if you have a period thereafter, that's after 9-11, then that gets you a 33-11 entitlement. Mr. Staitland, I've come up with an analogy that I am using in my own mind to think about your argument and the way that you are looking at the statute, and I hope you can tell me whether or not I'm right about this. All right, so the two benefits programs, the Montgomery program and the post-9-11 program, are like two different color baseball caps that service members can earn. The Montgomery benefits are a red hat that a service member is entitled to receive for a qualifying period of service, and when they're ready, they can wear that hat for up to 36 months to get a certain level of education benefits. The post-9-11 benefits are a blue hat that a qualifying service member is entitled to receive, and they can wear that hat to get a different level of benefits for up to 36 months. The law says that the member can earn more than one hat, this is what you were just talking about with Justice Thomas, for separate periods of service, but the two hats can't be worn at the same time. You have to do one or the other, and no matter how many hats the member has, he can only wear the hats and receive the corresponding benefits for a total of 48 months. Is that so far so good? Everything is what I agree with, Your Honor. All right, so I think you're arguing that Rutasell is entitled to and has received both a red hat and a blue hat for the separate periods of qualifying service that he has. He had the red hat he earned under 3011, that's what you said at the beginning, and the blue hat he earned under 3311 for his second or separate period of service. And so at this point, he's worn the red hat for 25 months and 14 days, and he used those benefits for his undergraduate degree, and now what he'd like to do is pick up the blue hat and wear that for up to the total 48-month cap. Is that what you're saying? Absolutely. All right, so there's no coordination. He's not exchanging. I mean, it seems to me that the 3322D and 3327 scenario is like a different situation. It's the service member who has a red hat during the period of time in which he could qualify for a blue hat, and he needs an opportunity to exchange it. Absolutely. I agree with everything you said, Your Honor, and I think the fundamental problem with what the VA has done here through this forum and now they've defended through the courts is what you described is exactly what Congress had in mind. And what the VA has attempted to do is they're trying to export this regime, which is plainly designed for what you're talking about, to a completely different scenario, which Congress was not trying to deal with. In that scenario, the scenario comes up, right, because we have 9-11 happening in September of 2001, but the effective date for being able to get a blue hat doesn't happen until 2009. So you have people who are serving in that period of time who just have access to the red hat scenario. They're not able to get the blue hat because it isn't effective yet. And if they want to ultimately change over their red hat to the blue hat, they have to have a mechanism to do it. Absolutely right. And it's even more than that, Your Honor. One, they were serving and crediting their service to Montgomery by making those payments, and like my client, using up those benefits. The post-9-11 program didn't even exist. They had no reason to know that they should save this period of service for something else. And 3327D and the limitations that Justice Thomas referenced are just making the common sense point that if you're a service member who has worn the red hat for some period of time and then you'd like to exchange it, you don't get, with the new blue hat, a full 36-month period. You just get the residual amount of time that's left on that red hat period, correct? That's exactly right, but it is also coordination because it's actually the one-to-one exchange that is laid out in 3327D seems logical. But you couldn't intuit that from the regime without the 3327D because the way that Montgomery benefits are earned and the way the post-9-11 benefits are earned are quite different. Montgomery benefits are earned basically on a per-month basis, which is that every additional month you serve in that Montgomery period of service, you get an extra month of Montgomery. And post-9-11 doesn't work like that at all. If you serve at least 90 days post-9-11, you always get only 36 months. And if you serve less than 36 months, then you just get less benefits going on. Can I take you back to the text of the statute? Yes. Because the way I saw the Federal Circuit analyzing this was that 3322, let's start with that, deals with a situation when you're entitled to benefits under both programs. Is that correct so far? Yes. The overall regime is a bar on duplication, and then 3322A prohibits one type of duplication. And then 3322D, I think you've got to focus really carefully on the exact text. It doesn't just say coordination of benefits. You've been really emphasizing a difference between entitlement and benefits. It says coordination of entitlement to educational assistance under this chapter on the one hand and such chapters or provisions on the other, namely Montgomery and post-9-11. It doesn't say that you shall coordinate. It says if you want to coordinate, then look at 3327. It says coordination of the entitlement. Right, but if you don't want to coordinate your entitlement, you just want to use your entitlement. And my friends would concede that if we just did... Well, I don't think you can... ...is what the statute says, coordination of entitlement shall be governed. Well, that's certainly not my friend's position. They say that if we first used our Montgomery benefits, and then for 36 months, and then used our post-9-11 benefits... Because at that point, once you've used up your Montgomery benefits, they're totally used up, there's nothing to coordinate at that point. But wouldn't you be coordinating at the first step? Because at that point, you would have been using when you have two benefits. They say that... So they say you're funneled then into 3327, necessarily, and if you get into 3327 and you still have some Montgomery benefits that are unused, you are bound by 3327E2A, then. Well, what they say is that the coordination provision is just suggestive. It just points you to 3327, and then you have to decide what 3327 means. And I think that must be right, because it's just a cross-reference. And also, it's just 3322D can't be doing that much work in any event. I mean, as I mentioned earlier, most of the provisions mentioned, and I urge ours to take a look at 3322D, most of those provisions can't be coordinated, aren't even mentioned in 3327. So most is a suggestive cross-reference. And then when you get to 3327, if you think the cross-reference takes you there, all you have is a may-elect clause. And the superstructure of the statute then is you have a clear, unambiguous plaintiff's date entitlement under 3311. So the question for the court is whether a may-elect clause, which is at best an oblique way to say something. Well, the point is I think you have Montgomery. You have entitlement to Montgomery. You have entitlement to post-911. You're pointed to 3327 by 3322D. Stay with me so far. I know you disagree with that. But when you get to 3327, then you can elect to go post-911, or you could stick just with your Montgomery. Those are your two options. We respect nothing in 3327 that says that second thing. What it says is you may elect, and then it doesn't say any penalty for declining to elect. So what happens when you have a plain-as-day statutory entitlement under 3311, plain-as-day, but then you don't make an election under 3327? They must be saying that the may-elect clause is an implicit revocation of your 3311 entitlement. And I would respectfully say, yes, that is just not a linguistically possible and certainly not a natural way to revoke an entitlement. If you look at 33- It's not a revocation of your entitlement after you use up your Montgomery. The thing that caps you is the 48-month limit. Right, and so what 33- So you still can get your post-911 after using up Montgomery. What 3311 and 3312, which is the sister provision, say is that the entitlement in 3311 is subject to the 48-month entitlement. It does not say that that entitlement is subject to making a 3327 election. And I urge your honors to look at 3312 for that. And so, again, the structure of our argument is as follows. If you have a plain-as-day statutory entitlement under 3311 and you have a voluntary may-elect clause, it is just not a natural or sensible reading of a may-elect clause, which doesn't impose a penalty for declining to elect, to say that that implicitly revokes a plain-as-day entitlement. It may make-I'm sorry? I'm just going to say it may make some sense in what they probably envisioned was the normal situation where you had the overlapping benefits on the basis of continuous service, but I'm not sure it makes much sense in the situation that you have where the benefits are earned because of separate periods of service. In that situation, I suppose you're saying you've got two completely distinct benefits and you can choose whichever one. You've earned both of them. You can choose which one you want to collect benefits under. Absolutely, your honor. It makes absolutely no sense. The exhaustion requirement that Justice Kavanaugh was talking about is as absurd a requirement as you could ever imagine in a statutory scheme dealing with veterans. Think about it. When my client came to the VA and said, I want to have about 23 months of post-9-11 benefits, they said you can't have that because you still have a bunch of Montgomery-you have basically 10 months of Montgomery benefits left over. Which is what the statute says in 3327. Except I don't see an exhaustion clause in 3327. Right. But what if my client had served shorter in that first period of service, your honor? What if he had served and gotten a hardship discharge just to get only 25 months of Montgomery? So give less time to the nation. Under the VA's position, my client would be entitled to the whole 23 months of post-9-11 benefits. It is hard to imagine a regime more absurd than that, than a veteran gets less benefits for serving more. The Congress establishes a more generous new program that you can switch into. But it's not infinitely generous in the sense that you get more monthly benefits. But if you had unused Montgomery, you get more in monthly benefits under the post-9-11. But if you had unused Montgomery, you can only use the post-9-11 up to the 36 months that you had originally. But your honor, let's just assume you're always going to have 36 months of Montgomery. It's possible to have 25 months of Montgomery. And the way the statutory regime works is if you have less months of Montgomery because you served less, you got a hardship discharge or whatever, you suddenly are entitled to more wartime benefits. And so it is a punitive penalty for giving more time to the nation. I mean, it's hard to imagine a regime serving veterans, trying to encourage longer service. I don't think I agree with penalty, but let me ask one question. If we conclude that 33-27 is the exclusive way for someone entitled to Montgomery to switch over to post-9-11 benefits, so I know you disagree with that, but if we conclude that 33-27 is exclusive, do you then lose? I mean, that assumes the entire argument. I'm just making sure. That assumes that a 33-27 election is the only way that one can invoke their statutory entitlement in 33-11. And there's absolutely nothing in the statute that says that. I mean, there seems to be an assumption that you would have to switch in order to be able to get the 33-11 benefits that you were separately entitled to because of your separate period of service. That's the part where I'm getting lost in the conversation that you had with Justice Kavanaugh. It seems to me, as I said at the outset, that if you have two separate periods of service, you are entitled to two separate benefit packages. Isn't that historically the way it was in the GI Bill? Absolutely, Your Honor. And there was no historical circumstance that would, absent any specific language, say that you had to complete entirely all of one before you decided to invoke the other. They were entitlements that you had because of your service. Absolutely right. It's never done that before. It wouldn't make any sense to. Why would Congress be enacting a regime where the statutory findings say those Montgomery benefits are outmoded? We want to reward wartime service with wartime benefits. And then, through these implications, through a vague cross-reference to a coordination clause, say that, no, no, what we really meant in a bait-and-switch is you've got to use up all 36 months of those benefits that we just said in our statutory findings are outmoded before you can get to the benefits that we're really enacting this bill to counsel us. Mr. Hyslop, is your argument dependent on the idea that you're not coordinating entitlement? It is not dependent on that. All the coordination clauses is a cross-reference to 3327. Our superstructure of our argument is, as I've said a couple of times, is that you have a plan-as-day entitlement under 3311. Well, I know that you have a plan-as-day entitlement in 3311. But if you're coordinating entitlement, I mean, I guess, you know, at certain points, I took you to be saying, well, we're just not coordinating entitlement. But if you are coordinating entitlement, shall be governed by 3327. 3327 doesn't make the kind of distinction that you're making between veterans with one period of service and veterans with multiple periods of service. So how do you get out of that, if not by saying what I took you to be saying at some points, but I didn't realize, I didn't take this from your brief, that you're not coordinating entitlement? We are absolutely not coordinating entitlement. We're just using... Okay, so your argument does depend on that, the idea that you're not coordinating entitlement. I do not believe that either side of this case has said that 3322D resolves this case. Certainly, if we win on coordination, we win the case. But even if your honors think that we lose on coordination, it's still the case that a may-elect clause is not a natural or linguistically, I say, possible way to revoke a statutory entitlement. I see. So you're saying that even if 3322 does direct people in your client's position to 3327, you still win because this is not a mandatory provision? Yeah, because it doesn't say it's revoking an entitlement. And I also think that... Congress did use shall elect, and I think they did that in 3322A elsewhere and 3033A. Yeah, I mean, I think the difference between shall and may is critical here. I mean, it's telling the veteran that you don't have to elect, and it's not giving any penalty for not electing. And what do you do in your interpretation with the fact the statute in both places references as of August 1st, 2009, I think? I think ourselves and the VA agree that that's just the effective date. Is that the effective date, or does that suggest something about what's being coordinated here, a single period of service? Certainly, it could be suggestive of that. In thinking through that interpretation, it does lead to some weird outcomes that are hard to think Congress was intending to do. But certainly, if your honors read it that way... It just seems to me awkward that we would read that out of the statute altogether rather than perhaps as a clue that what Congress was up to was trying to deal with, as Justice Jackson said, those members who, as of that effective date, had some preexisting Montgomery benefits that they wished that they chose to elect, may elect, to turn into 9-11 benefits. Certainly, that reading would benefit my client. And it is a very sensible reading of the statute. Well, of course it is. No, but I would be cautious if the court is going to rule for us invoking that rationale because it would have unfortunate collateral consequences for veterans who had those two periods of service after the effective date of the post-9-11. I understand that. That would create negative consequences for a lot of people. I understand that. That particular reading would because then people would have to guess. One further question. There's some debate between the two of you about what has happened in the past when there's overlapping periods of service. Two benefits available. Can you speak to that? Yeah, I mean the way that the GI bills have always worked is when you have two periods of service, you can't use them at the same time, but you can't credit the same period of service. You can't credit a single period of service to two types of benefits. I mean the clearest way to see that with regard to the provisions here is the traditional Montgomery program and the Montgomery Selected Reserves program. Under 33C, you can't get the Selected Reserves benefits and the traditional Montgomery benefits for the same period of service. So that is a prohibition against drawing upon a single period of service. Any exhaustion requirements previously in history? No, and none in this provision either. It's entirely a figment of the VA's imagination, I would respectfully submit. Is there a statutory provision that specifies when the election under 3327A must be made? Well, there is not, but our position is that if somebody has credited their period of service to Montgomery and they want to cash in that same period of service for post-9-11, so then when they want to cash in their remaining Montgomery credits for the more generous, life-changing post-9-11 credits, then they need to make that election. Does the government disagree with you on that point as to timing? My understanding is the government doesn't disagree with us on any way how the statutory regime works for somebody for whom it was naturally designed, for someone who wants to trade their Montgomery for post-9-11 benefits. It also doesn't disagree with us on how the statutory regime works for someone that's used up all their Montgomery benefits and just wants to draw on 12 months. Would the statute preclude the Secretary from saying that the election under 3327A must be made at a particular point in time? Because if you elect, an individual may elect to receive post-9-11 benefits if the individual elects not to receive those benefits. That would be irrevocable, right? Certainly, that decline to make the election is not... I thought there's a provision that says it's irrevocable. Yes, when you make the election, you can't unwind it. Well, if you have to make the election one way or the other, then you can. If you elect not to get the 9-11 benefits, then you can't get the 9-11 benefits. It's irrevocable. Certainly not our position, Your Honor. I know it's not your position, but why is that wrong? Because the provision that says that the election under A is irrevocable, I think in both statutes it's only irrevocable to make the affirmative election. If you don't make an election, I don't think the VA, and maybe my friend will correct me, treats that as making any sort of election under 3327, but I could be wrong as to that position. Thank you, Counsel. Just a couple of questions to clarify my own understanding. Did I understand you to say that your position, your analysis of the statute, and the consequence would be the same with respect to somebody who had no break in service? It was all continuous service? Yes, Your Honor. Or would it be different? It would be the same. Okay. Thank you. Justice Thomas? Justice O'Neill? Justice Forsett? Justice Kavanaugh? Just on the may elect, so I understand, when you get to an educational institution and you have some unused Montgomery, and you are also entitled to post-9-11, you presumably have to fill out a form to tell the educational institution which you're using, correct? What you do is you fill out a form with the VA, and in our circumstance, our client filled out a form that invoked only his second post-9-11 eligible only period of service. Then the VA will issue you a certificate of eligibility, and you take that. Does the form have a choice between, okay, I'm showing up for a graduate school. I'm going to use either Montgomery or post-9-11 or other boxes potentially? Yeah, I mean, my client filled it out online, and you've got to select which benefit. It's one of the boxes to select Montgomery? Yes. So you may elect Montgomery. Yeah, and that would be an election under 3322, which you have A, which you have to make, pursuant to the concurrent use of that. Because if you're going to claim veteran benefits, you're going to have to elect one or the other to get the school, to get the benefits for the educational institution. Right, and that election is mandatory under 3322A. The 3327A is not mandatory. Thank you. Justice Barrett? I have a clarifying question. You pointed out that no prior GI bills have worked this way. Did any of the prior GI bills deal with overlapping periods of entitlement? Well, certainly the Montgomery traditional, the Montgomery Select Reserve overlap, which is why you had 33C, and there was no exhaustion requirement or anything like that. There's also not GI bills, but pre the original World War II era GI bill, there were benefits that could be earned under the same period of service that then made you eligible for the more generous, for original GI bill benefits, and there was no exhaustion requirement there. But this particular situation where you have these two, like the Montgomery and the post-9-11, where you have an entitlement, your client's situation, are you saying it arose before? It did not, but I will also say that my client's first period of service largely was before the period after 9-11, and a lot of folks who are governed by their regime are. Well, I was just asking about the history of the way the prior GI bills worked. As you pointed out, it would be unusual for this one, given that Congress didn't have this exhaust or forfeit requirement in the other regimes, so I was just wondering how analogous this was, but I think you answered that. Well, for the main GI bills, they're not overlapping, but for the subsidiary reserve ones and other programs, certainly they are overlapping. There's never been a requirement that you use up the meager benefits to get the good benefits. There were a couple of questions about coordination, and I thought the point of coordination was the swap, and I think that the text sort of bears that out, because if you look at 3322D, you're beginning with a person who has Montgomery benefits or some other types of benefits, and as of August 1st, and I think take Justice Gorsuch's point that that might be relevant to identifying the people in this particular situation, coordination of entitlement to assistance under this chapter, meaning the post-9-11 benefits, takes place under 3327, and as you say, when you get there, you may elect, but I thought the sort of critical part was 3327D-1, which is where the swap is affected. If you're making an election under subsection A, you shall be entitled to the post-9-11 benefits. Instead of the benefits that you would have received in Montgomery. So the reason why you're coordinating, I thought, under the way that the statute reads, is to affect the swap of the unused Montgomery benefits. That's obviously what 3327 is designed to do. Every textual edition of 3327 is a trading regime. The entire argument my friends come up with is fitting a square peg into a round hole or vice versa. Because you don't need this to get your entitlement to the post-9-11 benefits, because you had those already at 3311. You're only coordinating to make a swap, right? Exactly right. All right. Thank you, Counsel. Mr. Suri. Mr. Chief Justice, and may it please the Court, I think the crucial question in this case is whether Mr. Rudisill was required to elect post-9-11 benefits in order to receive them. So I'd like to begin by discussing who does and doesn't have to make an election in order to receive post-9-11 benefits. A person who's entitled to benefits under only one program doesn't need to make an election. He can just apply for the benefits and receive those benefits. An election is a choice between multiple programs, and if you're covered only by one program, there's no choice that needs to be made. A person who is covered by two programs or more, however, does need to make an election. This is explicit in the text of Section 3322A, which is on page 1A of our brief. I'll read the relevant portion aloud. An individual entitled to educational assistance under this chapter, that's post-9-11, who is also eligible for educational assistance under Chapter 30, that's Montgomery, and it goes on, shall elect under which chapter or provisions to receive educational assistance. In other words, if you're eligible for both Montgomery and post-9-11 benefits, you must make a choice. You can elect post-9-11 benefits, or you can elect Montgomery benefits. And if you elect post-9-11 benefits, that election would be made under 3327, triggering all the consequences that 3327 specifies. 3322D reinforces that command. It states that entitlement must be, shall be governed, coordination of entitlement shall be governed by 3327. And that makes it quite clear what 3327 is doing. It means that if you're eligible for both Montgomery benefits and post-9-11 benefits, 3327 is the provision you go to to combine those two programs. And that's consistent with how the Federal Circuit applied this provision, and therefore its judgment should be affirmed. Where do you statutorily peg the exhaustion requirement? The exhaustion requirement arises from the fact that someone who is covered by only one program doesn't need to make an election in the first place. So it is a consequence of 3322A and 3322D. Someone who has exhausted his Montgomery benefits and has only post-9-11 benefits remaining is covered by only one program, and therefore wouldn't need to make an election in the first place. Mr. Sturey, I don't understand your reading of 3322A. I mean, it seems that your argument is turning on the supposition and the proposition that a person who has two separate periods of service and is entitled under the statute, and I assume you don't quibble with the entitlement to the post-9-11 benefits under 3311, right? So he's entitled to both Montgomery and post-9-11. You say that he has to choose as though he is not allowed to cash in or take advantage of both. So first of all, is that reading coming from 3322A as you've said? Yes. All right, but I didn't hear you necessarily to read the entire section, which seems to me to cast a different light. When you say an individual is entitled to educational assistance under this chapter, this is the beginning of 3322A, it goes on to say, may not receive assistance under two or more such programs concurrently, but shall elect in such form as the secretary under which chapters to receive educational assistance. It seems to me the prior reference to concurrently is doing a substantial amount of work to explain that you can't get them at the same time, but you'll need to elect which one you want to get at which time. That is different than suggesting, I think, that you have to choose between them such that you can only have one ever. I agree with everything you said, Mrs. Jackson, but 3327 is the mechanism by which you elect, if you're eligible to vote, that you now want to receive post-9-11 benefits. And we can look at the text of these two provisions to see why that's so. If you look at the last words of 3322A, it says that you shall elect under which chapter to receive educational assistance. This is page 1A of our brief. And then page 4A of our brief, 3327A states, an individual may elect to receive educational assistance under this chapter. So there's an exact parallelism. 3322A says you shall. There's a sort of parallelism. I'll grant you. But as Justice Jackson pointed out, A on 3322 is about concurrent. You can't have concurrent. That's always been the law. No surprise Congress wants that to be the case here. Shall elect. In other circumstances, Congress has used shall elect as well. 3033A, I believe. Here, when we get to when you, and I think you agree in your brief, that 3322 doesn't resolve the question presented before us, right? The question presented has to be resolved by looking at both provisions together, not by one or the other alone. I think you said as much on page 14 of your brief. The coordination clause does not resolve the specific question presented, right? It points to 3327. So we've got to go to 3327. When we get there, we don't have a shall. We have a may. Absolutely. May implies. So the parallelism is sort of parallel, but not quite parallel. May implies that you have multiple options. You can opt to elect post-9-11 benefits, or you can opt to elect Montgomery benefits. Doesn't it also possibly imply that you don't have to elect at all? No, because 3322A says you shall elect. Well, it says shall elect with respect to concurrent benefits. It doesn't speak to benefits otherwise. Right? A is about concurrent benefits. No. 3322A is about concurrent benefits. A has two distinct requirements. It first says may not receive assistance under two or more such programs concurrently, and then it also says shall. No, no. It doesn't say also. It doesn't also say. It says but shall. Yes. Okay. So instead of concurrent, you have to pick one. I get that. Suppose I'm right about that. Just spot me that. All right? I've got a shall here. I've got a shall in 3033A, which is, again, about coordinating between two different programs. But when I get to 3327, I have a may. So why isn't it an option to a veteran simply not to elect at all? May usually means may, doesn't it? I agree that may means may. And may implies normally that you don't have an obligation to do anything, right? And it implies that I'm entirely agreeing with your reading of may in this provision. I'm just suggesting that the alternative to electing post-9-11 benefits under this provision is not, as Petitioner suggests, not electing them but receiving them anyway. The alternative is electing Montgomery benefits or continuing with Montgomery benefits. And that's the most natural way to read A itself. Well, I mean, just to follow up on Justice Gorsuch's point, the most natural way to read may is may. And that's very much compelled if a couple sections earlier you have the phrase shall elect, which suggests that that's quite a different... You don't have a choice there, but when they say may elect, you do have a choice. I agree, Mr. Chief Justice, and I would reconcile the two provisions in the following way. The first provision, 3322A, says you must make a choice. You must choose either Montgomery or post-9-11. And then 3327A says you may elect post-9-11. Now, that means the other choice that you have is you may elect Montgomery. It doesn't mean that the other choice you have is receive post-9-11 anyway without choosing it. I know there must be something wrong with the way, at least on this point, because it doesn't make any sense. But the reason that the petitioner here has this particular difficulty is that he served an additional tour of duty after 9-11, in addition to what he had served before 9-11. Now, if you have somebody who just joined up after 9-11 for the same period as the petitioner served, the petitioner is getting fewer benefits than the person who only served one tour of duty for the same length. Because if he served just the post-9-11 for whatever, three years, he would get three years. But because this petitioner had served additionally beyond his period of post-9-11, he doesn't get the full benefit of the post-9-11 benefits. So there must be something wrong there because that would not make any sense. The reason petitioner isn't getting as many months of benefits as the other veteran in your hypothetical is not that he is being penalized for serving two tours of duty. The reason is he has already used 25 months of benefits. Different type of benefits I grant. The Montgomery benefits. Montgomery benefits. But a program that is designed to do a similar thing to the post-9-11 program. But that still doesn't make all that much sense because he is getting those other benefits because he had a couple additional tours of duty. So maybe he is entitled to both of them. But because of this other provision there, he can't get both at the same time. But it seems to me to be a pretty raw deal to say you are going to lose. You are entitled. If you hadn't done anything other than the 9-11, you would be entitled to this. But because you served an additional period of time, you don't get the whole 9-11. You have to exhaust this other less generous plan first. Mr. Chief Justice, the reason he is not getting the additional benefits again is not that he served an additional period of duty. It is that he already went to college using some benefits that the government has provided. He was fully entitled to those benefits because of his additional tour of duty. Fine. But if you take him and somebody else says I didn't have an additional tour of duty and that person has the same length post-9-11, the person who didn't serve as long gets the full post-9-11 benefits, but the petitioner does not. And you say, well, but he is getting other benefits under another program. Well, that is because he earned those benefits because of his other service. But, Mr. Chief Justice, everyone who is going to be using this election provision in 3327 is going to be entitled to both sets of benefits. And this follows from the text of 3327A1 and A2. A2 states that in order to use this election mechanism, you must meet the requirements for entitlement to educational assistance under this chapter. That is, under the post-9-11 bill. Now, if I understand that answer, it is that, look, you can only go to college so many years, and we are paying for years of college for the people who got Montgomery benefits. And even though you get additional benefits under post-9-11, you know, we are not going to pay for eight years of college. Let me try a different way of equating that. Well, but is that a good, reasonable way of looking at it? That is the consequence of what Congress has wrote. And let me take a stab at explaining why Congress might have designed the statute this way. The purpose, or one purpose, of the GI Bill is to enable someone who has served in the military to transition back into civilian life. That is why the first GI Bill was called the Servicemen's Readjustment Act. It was about readjustment. And Congress could conclude that in order to readjust, you need 36 months of benefits. That is four years of college, nine months per academic year. And it could say that whether you get these 36 months through one program or through two programs is not of much concern to us because these two programs are closed substitutes for each other. But how do you reconcile that with the 48-month cap? I mean, there is something in the statute that Congress has made clear that you get up to 48 months of benefits. So how is that consistent with your story about Congress having a purpose to limit people to 36 months? In order to answer that question, I will need to explain how the overlap between the Montgomery and post-9-11 GI Bills differs from the overlap between previous bills. But are you saying the 48 months does not apply? I mean, I thought that Congress chose a cap, right, consistent with your story. We have to let this in somewhere. You can't, you know, have every degree available on the government's dole. So 48 months. And I understand Mr. Rudisell to be saying what I would like to do is take my separate periods of service and the benefits that I have accrued and are entitled to as a result of those and get 48 months' worth of benefits. And I'm not sure it makes sense to say the government is saying no, you can only have 36 because you used some of them before, which sounds like what you're saying. What I'm saying is that he can only use 36 because the limitation clause, 3327D, specifically says that. Now, I'm trying to explain why it is that Congress might have done it that way. And your answer is because they only wanted you to have 36 months, but then I point to the 48. So that can't be right. What's the other answer? The answer is Congress treated this overlap between these two GI bills differently from the overlap between other GI bills. Other GI bills apply to different wars. You could serve in Vietnam and also serve in Korea, and that's how you'd get to 48 months. That's not what happens under Petitioner's view under this statute. Imagine a veteran serves six continuous years in one war, just the Iraq war. What Petitioner would allow that person to do is say, I'm going to apply the first three years of my Iraq war duty to the Montgomery program, apply the second three years to the post-9-11 program, and get more than 36 months of benefits, even though I've served only in one war, and that's something Congress has never previously allowed. Well, you said earlier that the purpose of this is because you're transitioning back to civilian life, and this will allow you to get the degrees that you mentioned. But here you have a situation where instead of transitioning after having served the first time and transitioned, you're saying, well, you don't get another transition because instead of just, you know, whatever, you decided to go back to Iraq and Afghanistan and get a Bronze Star. So we don't have to worry about you transitioning to school. Mr. Chief Justice, this is the consequence of the statute that Congress has written. If that statute creates hardship in particular cases, then Congress is free to amend the statute, as it has done many times before. It is notable, however, that Congress was aware of the way the VA has been applying the statute in the 2011 amendments, the Senate report accompanying that shows that, and it chose not to change that interpretation. If I understand the way this statute works, and this goes to your explanation of why Congress could have written it this way, but if I understand the way the statute works, suppose a veteran has 35 months that he's already covered, so he has one left. You're saying he has this choice. He can take the 36th month under Montgomery, and if he does that, he gets a full year extra under 9-11. Or he can swap out the Montgomery for the 9-11 for the single month left, and then he forfeits the additional year. So why would that choice be put to the veteran? I can explain why Congress might have decided that those who have already exhausted their Montgomery benefits should still have the opportunity to get some additional post-9-11 benefits. There are a few different reasons that might have explained it. We don't know, in fact, why Congress did it. The first possible reason is that Congress was creating the post-9-11 program and making it retroactive. It knew that there would be some veterans who had served after 9-11, but before 2008, when the post-9-11 bill was enacted, and who had already used up all of their Montgomery benefits. And Congress may have wanted to ensure that those veterans get something, and so the something it gave them was to allow them to get 12 additional months after exhaustion. That's one possibility. A second possibility is this may be an artifact of the fact that the post-9-11 bill was originally limited to college education, and the Montgomery bill was designed to focus on vocational education. Congress may have decided that if you've used your 36 months of post-9-11 benefits to go to college, you don't need additional benefits under the program that's geared toward vocational training. But if you used your 36 months of benefits under the vocational program, then you might still want to go to college for a few years, and therefore will leave open the option of getting the post-9-11 college-related benefits. A third possibility is that Congress said, we're going to be extremely generous for those who want 36 months of benefits. We'll have this extremely helpful post-9-11 program. But for those who want more than 36 months, we'll make a trade-off. You can use the less expensive program for most of the time when you're going to college, then you use the more expensive post-9-11 program when you're going to graduate school. This is a perfectly reasonable trade for Congress to make if it's trying to limit the overall cost of the program. The only problem with that answer, it doesn't really answer Justice Kagan's question. Her hypothetical suggested, I think, that it's irrational to think that Congress would say, if you wait and take the one month, you'll get 12. But if you decide to not take the one month and switch over immediately, that you're going to lose those 12 months. That's what's basically, I think, the irrationality. And I just think it's utterly arbitrary. I'll add two points in response to that. One further possibility is that that is an unintended consequence of how these coordination provisions were written. Coordination of benefits is a very complicated enterprise, and it may be that this is just an unintended consequence of what Congress wrote. A final possibility is that we're wrong about the exhaustion rule. It may be that once you've exhausted the Montgomery benefits, you don't get additional post-9-11 benefits. But that's not the question before the Court today. The only question that's presented here is how many months of benefits Mr. Rudisill has. That seems odd, doesn't it, that Congress is going to penalize a veteran who, as the other side pointed out, has served the country for a longer period of time, put himself at risk in not one war but two wars, and now we're going to deprive him of access, of any access, to the more fulsome benefits? Justice Sotomayor, no one is being made worse off. Before Mr. Rudisill went into his third period of service in 2007, he had no expectation of receiving post-9-11 benefits because that program didn't exist yet. No, but the very purpose of the 9-11 program was to ensure that he did serve. He could have retired, but he chose to stay, and there should be a benefit, which is what Congress made available to him. It is not the statutory scheme that the more periods of service you have, the more benefits you obtain. Someone could serve three years, five years, or ten years and still get only 36 months of Montgomery benefits. Can I move on from that answer for a second? 3327H1. Yes. It's an amendment that's happened more recently. Is that amendment intended to take care of the hypothetical that Justice Kagan and I are saying is a bit irrational or suggesting might be irrational? No, that takes care of a different problem. Okay. Go ahead. And it is a crucial piece of context in interpreting 3327 because on petitioner's view, 3327 becomes potentially rather superfluous. 3322H states that you can't use the same period of service to establish entitlement to two different programs. You've got to credit it to one program or the other. But 3327 says that in order to make an election, you must be entitled to both Montgomery benefits and post-9-11 benefits. So you have to have eligibility for both programs, and this provision, H, is telling you you can't be eligible for both programs based on a single period of service. If you put those two things together, on petitioner's view, 3327 does no work at all. It doesn't apply to people with multiple periods of service because that's his theory. And it doesn't apply to people with a single period of service because H says you can't be eligible for both programs based on a single period of service. So what does H mean? What can the Secretary waive? Which election? I'm sorry. I thought you were referring to 3322H. No, I said 3327H1. 3327H states that if a veteran makes a choice that the Secretary determines is not in his best interests, the Secretary... When would that occur? That would occur as soon as the Secretary receives the election. I will note that provision does not apply to this case because it refers to elections made from 2017 onward, and this particular election was made before 2017. What is your response to your counterpart's contention that the work of 3327 is to affect the swap, and that insofar as Mr. Rudisill is not seeking to swap, it doesn't apply to him? I appreciate the chance to answer that question. I give a few answers to that. The first is the text of 3327A, again, page 4A of our brief. It says an individual may elect to receive. It's talking about receiving benefits, not converting benefits or swapping benefits. The second point is a structural one. No, go on to D, right? D, subject to paragraph 2, an accept is provided in E, an individual making an election under A, which is what you just referenced, right, shall be entitled to benefits under this chapter instead of... So is that not doing the work of saying the reason why you're in 3327 at all is because if you're an A person who has made an election, you're seeking to convert? I appreciate the force of the point with respect to D if you look at that provision alone. But if you go back up to A, it says that in order to make an election, you have to both be entitled to Montgomery benefits, that's A1, and be entitled to post-911 benefits. That's A2. I take that point, but just to follow up on my colleague's observation, D tells us what the effect of an election under A is, right? Yes. And that is swapping one benefit for the other, right? Instead of... D says that you will be eligible for the one and you will no longer be eligible for the other. Swap one for the other, right? But... Right? Yes, I take that. That's the effect of an election under A. Yes, but we must also look at who can make an election under A in the first place. And you have to be entitled to post-911 benefits. And you're entitled if you serve in the relevant period. I mean, this is where the overlap is coming that I think he's identifying. This is a person who has one period of service, but that period of service is happening at a time in which only Montgomery benefits are available to him because post-911 has not yet been in effect. But he's earning post-911 because he's serving after 9-11. And the question is, will he be relegated to just having Montgomery because that was all that was available to him during his period of service? Or is there some mechanism that allows him to get the post-911 benefits that he's entitled to because of his period of service? And I read 3327 as doing that. Exactly right. 3327 is the mechanism for someone who is entitled to both programs to start receiving post-911 benefits. Yes, but not because of separate periods of service. Mr. Rutherfeld says, I'm not entitled in the same way. I'm entitled to these separately because I have two periods of service, not the one that is falling in the overlap. I have two, he says. And my response to that is there's no statutory text whatsoever that draws a distinction between one period of service and two in 3327 or in 3322D, the provision that points to 3327. A, you pointed to two periods of service in 3322A. 3322A doesn't say anything about periods of service either. And it's notable that Petitioner says that many provisions in this statute that say nothing about periods of service apply to him. For example, 3322A says you can't use two different programs concurrently. He says that applies to him. He doesn't say that doesn't apply to people with multiple periods of service. So he seems to be reading in a multiple period of service limitation to 3327, but not to these other provisions. And he doesn't explain the justification for that other than potentially it would be a fairer or more sensible scheme. And he may be right about that, but this is not the forum for that debate. Thank you, Counsel. Justice Thomas? Justice Alito? Do you know how many veterans are affected by this question? We don't know exactly. The best estimate that we have is that it could be up to 30,000 veterans who potentially would be affected, that is individuals who fall into the same multiple periods of service and have already used some Montgomery benefits category. That doesn't mean, however, that all of them have plans to go to graduate school or all of them would use the benefits that would be available. When a veteran enrolls in a college program and fills out the form to get benefits from the VA, if that veteran asks for Montgomery benefits, does that constitute an election not to receive the 9-11 benefits? That constitutes an election to receive Montgomery rather than post-9-11 benefits. But to respond to a question that you posed to Mr. Safelin earlier, if I may, that election is not irrevocable. The only election that's irrevocable is the election of post-9-11 benefits, and that follows from the text of 3327I. Okay, thank you. Justice Sotomayor? To that last question, the way I understand your reading of the statute, someone who qualifies for Montgomery and post-9-11 benefits under separate periods of service could not use their 36 months of post-9-11 benefits first and then get 12 of Montgomery? That is prevented by a different provision that we haven't talked about yet, which is 3327D1, which states that once you've elected post-9-11 benefits, you're no longer eligible for the Montgomery benefits. That one I'll have to look at. Okay, thank you. Justice Kagan? Justice Kavanaugh? I just want to make sure one thing first, that you said you can't receive post-9-11 benefits unless you elect to receive them. For an individual who's covered by multiple programs, that's correct, Justice Kavanaugh. Okay, so there has to be an election, and your point is the only way to make an election is under 3327. That's correct. Okay. Second, I think you've been asked about the other side's point that 3327 is best read as a swap or trade-in provision, and you said you appreciated the opportunity to answer the question, but I don't think you were able to get the answer, so I'm giving you a full opportunity to answer that question. Thank you, Justice Kavanaugh. The first answer is the textual point, which is 3327A says, an individual may elect to receive educational assistance under this chapter. That echoes the language of 3322A, which says, shall elect under which chapter to receive educational assistance. That's a clue that this provision is one of the options that is on the table under 3322A. 3322A is saying you must pick either Chapter 30, Montgomery, or Chapter 33, post-9-11, and this provision is saying here's how you pick post-9-11. That's one answer. The second answer is the structure of 3327A. It applies only to individuals who are eligible for both programs, so that precludes the idea that it's meant to allow someone who is eligible for one program to trade in benefits in order to obtain the other program. You have to already have post-9-11 benefits in order to make this election in the first place, and that's in the text of 3327A-2. The third answer is going back to 3322D, a provision that was discussed earlier during Mr. Safelin's argument. It tells us what 3327 is designed to do. It states that an individual must coordinate entitlement under 3327. It doesn't say that an individual can convert entitlement under 3327. It's notable that in Mr. Safelin's brief, he resorts to phrases such as the veteran has no need to coordinate Montgomery benefits into post-9-11 benefits. That's not a normal usage of the word coordinate. You coordinate one program with another program. You don't coordinate or convert one program into another program. So those are the textual reasons, the most important textual reasons, that 3327 can't be about swapping. How much significance, if any, is there that it says coordination of entitlement and not coordination of benefits? That is a very significant point, Justice Kavanaugh, because that, too, suggests that this provision is meant to address specifically veterans who are entitled to both programs. Congress thought about veterans who have multiple types of entitlement, and it wrote this provision saying go look at 3327 to determine how to coordinate those programs. Thank you. Justice Barrett? Justice Jackson? So just on that very last point, you've repeatedly emphasized that this is about veterans who already have entitlements to both programs, right? What I don't see in 3327A2 is language that supports that. If you look at that actual provision, it says it's talking about an individual who may elect to receive if they are, as of August 1st, under these certain categories, that's A1, and then as of the date of the individual's election, meets the requirements for entitlement to educational assistance under this chapter. So the language there is not is entitled or already has been entitled. It seems to be suggesting that if you're one of these people who meets the entitlement, then you can go on, as Justice Gorsuch points out, to D, which tells us what happens, that you can exchange. I mean, do you dispute that D has sort of an exchange quality to it? I don't dispute that. So what's it doing if not the spot? I'll say a couple of points in response to that. The first is the only way to be entitled to post-911 benefits is to meet the requirements for entitlement. I appreciate, but Congress doesn't use superfluous words when we interpret a statute. If it says meets the requirements, it's doing something different, presumably, than you are entitled, which is the way you're reading it. I think that's giving the drafters of the statute a little too much credit, Justice Jackson. All right, so what is D doing if not the swap? D is providing two things. D1 is stating that you cease to be entitled to one form of benefit and you can start using the other form of benefit. But why? I thought you said you were entitled to both. Why would a person do this? Because Congress said this is the provision that must be used to court. I see. And one last point, if I may, Justice Jackson. It's notable that 3327A1 also refers to individuals who don't have any Montgomery benefits in the first place. So this is in 3327A1F, is a member of the armed forces who is not entitled to Montgomery benefits. Right, because a lot of people were shuttled to this, right, from 3322D. There were lots of people, not only the Montgomery benefit people, but others. I think that defeats the conversion idea. These people have no benefits to convert, and yet they're covered by 3327. Thank you. Thank you, Counsel. Rebuttal, Mr. Saitlin? Thank you, Your Honor. My friend started with 3322A. I think it's pretty remarkable that they appear to be basing their argument based on this provision. The election in 3322A is a mandatory election, which is clearly in service of the concurrent usage bar. It's doing completely different work than 327. It is identical to the election mechanism in 33A, and my friend doesn't say that that somehow shuttles somebody into 3327. In fact, that provision strongly supports our position in two respects. One is the suggestive difference between may and shall, and second is that their interpretation renders 3322A's mandatory bar on concurrent usage superfluous, because under their reading of 3327, a veteran who's entitled to Montgomery and post-9-11 either has to use up all their Montgomery benefits to get to post-9-11 or give up their Montgomery benefits to use post-9-11. Either way, concurrent usage would be impossible, which means that this entire provision would be superfluous. Second, 3327 is plainly a swapping mechanism, and every provision, every subsection of 3327 points in that direction. We talk about A. That's the voluntary election mechanism. I heard my friend mention A1F. That provision serves absolutely no function under his exhaustion view, because that person has no Montgomery benefits to exhaust. With regard to B, that lets you stop paying. With regard to C, that lets you revoke the transfer of Montgomery benefits, because now they're so much more beneficial because you can train them for post-9-11 benefits. D is, plain as day, a swap. F lets you get your Montgomery payments back pro rata. Every single indication is that Congress was creating a swapping mechanism, not an exclusive mechanism to invoke your 3311 entitlement unless you've exhausted your Montgomery benefits. Three, the number of veterans impacted. My friend says 30,000. That's just plain wrong. It's north of a million, and that's because their interpretation doesn't just cover those that are on 3327D2. It also covers those that would be split into 3327D1, which is how you get over a million. You heard my friend attempt to do backflips to try to get around how the exhaustion requirement makes any sense whatsoever, an unprecedented exhaustion requirement, and then when he kind of hit a brick wall, he said, well, maybe the exhaustion requirement doesn't have to exist. Well, that just would put the VA into even more absurd land, where veterans who served before 9-11 used up all of their benefits, Montgomery benefits before 9-11, then felt the call after the September 11th attacks would be entitled to no post-9-11 benefits whatsoever. That's even more absurd than the absurd exhaustion concept, and I will close on the following. All of these kind of backflips and whatnot are entirely unnecessary. The statute should be read as what it says. 3311 gives you a plain-as-day entitlement. 3327 is a voluntary swap mechanism. It does not limit that entitlement in any way. Read in that way, the statute has no superfluity, has no problems in it, and it plainly achieves the pro-veteran purposes for which Congress enacted the post-9-11 GI Bill. Thank you, Your Honors. Thank you, Counsel. The case is submitted.